**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SEAN W., | ) | |
| | ) | |
| Plaintiff, | ) | No. 25-cv-7647 |
| | ) | |
| v. | ) | Magistrate Judge Keri L. Holleb Hotaling |
| | ) | |
| FRANK BISIGNANO, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sean W.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") ("SSA") denying his applications for disability insurance benefits and for supplemental security income. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment [Dkt. 19] is DENIED and Defendant's motion for summary judgment [Dkt. 21] is GRANTED. The final decision of the Commissioner is affirmed.

**1. Social Security Regulations and Standard of Review**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). The court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018);

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Plaintiff has filed a Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [Dkt. 19], which the Court construes as a motion for summary judgment. The Commissioner has filed a Memorandum in Support of Motion for Summary Judgment [Dkt. 21], which the Court construes as a motion for summary judgment.

*Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024); *see also* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the administrative law judge's ("ALJ") judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). This "lax" standard is satisfied when the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (internal signals omitted) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build[] an accurate and logical bridge from the evidence to [their] conclusion." *Hess*, 92 F.4th at 676; *Lincoln v. Bisignano*, No. 24-cv-2668, 2026 WL 1097737, at *2 (7th Cir. 2026). Finally, while reviewing a Commissioner's decision, the court does not second-guess the ALJ's judgment – the Court may not "substitute [its] own judgment for that of the Commissioner [,] reconsider facts, reweigh the evidence, resolve conflicts in the evidence, or decide questions of credibility." *Fitschen v. Kijakazi*, 86 F.4th 797, 802 (7th Cir. 2023).

**2. The ALJ's Decision**

In her May 3, 2024 decision, the ALJ analyzed Plaintiff's claim following the SSA's usual five-step evaluation process to determine whether Plaintiff was disabled. [R. 16-36.] At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 30, 2018, the alleged onset date. [R. 18.] At Step Two, the ALJ found Plaintiff had the severe impairments of status post-open reduction internal fixation, right ankle fracture; chronic obstructive pulmonary disease; overweight; bipolar disorder; anxiety disorder; attention deficit hyperactivity disorder; post-traumatic stress disorder; and substance use disorder. [R. 19.] The ALJ found several ailments

to be nonsevere (*i.e.*, imposing no limitation on Plaintiff's ability to perform work activity lasting or expected to last for at least twelve continuous months), including an injured hand; a rash; epilepsy, seizure disorder, or pseudo-seizure disorder; head injury; alcohol withdrawal; autism [R. 19-20.] At Step Three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1 (20 C.F.R. 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926). [R. 20.] In determining Plaintiff's mental impairments, the ALJ also analyzed the so-called Paragraph B and Paragraph C criteria for assessing mental impairments. The ALJ found Plaintiff had (i) a mild limitation in understanding, remembering or applying information, (ii) a moderate limitation in interacting with others, (iii) a moderate limitation in concentrating, persisting or maintaining pace, and (iv) a moderate limitation in adapting or managing oneself. [R. 25-26.] The ALJ further found the evidence of record failed to establish the presence of Paragraph C criteria. [R. 27.]

Before Step Four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with the following specific limitations:

> - Occasionally lift and/or carry a maximum of 20 pounds;
> - Frequently lift and/or carry a maximum of 10 pounds;
> - Walk and/or stand for about 6 hours total out of an 8-hour workday;
> - Sit for about 6 hours out of an 8-hour workday; and
> - Push and/or pull to include operation of hand/or foot controls with the bilateral upper and lower extremities as restricted by the limitations on lifting and/or carrying subject to:
>
> Postural limitations of:
>
> - Never climbing ladders, ropes, or scaffolds;
> - No more than occasionally climbing ramps or stairs; and
> - No more than occasionally stooping, crouching, kneeling, or crawling.
>
> Additionally, the claimant has restricted (sic) to work that requires understanding, remembering, carrying out, and sustaining unskilled tasks that are not complex tasks, and allow for the performance of the same tasks, day in and day out.
>
> The work should not require contact with the public for work purposes, and no more than occasional contact with co-workers and supervisors for work purposes.

[R. 28.]

At Step Four, the ALJ concluded Plaintiff was unable to perform any past relevant work. [R. 34.] At Step Five, after considering the Plaintiff's age, education, work experience and RFC, the ALJ found Plaintiff capable of performing other jobs existing in significant numbers in the national economy. [R. 35.] Accordingly, the ALJ found Plaintiff was not disabled from the alleged onset date through the date of the decision. [R. 36.]

**3. Discussion**

While Plaintiff makes several facially compelling arguments as to the ALJ's errors in this matter, the Court is ultimately persuaded by the Seventh Circuit's recent decision in *Liapis v. Bisignano*, 180 F.4th 946 (7th Cir. 2026) that these several alleged errors were harmless because they made no difference to the ALJ's ultimate disability conclusion. In *Liapis*, although the Court found there were five errors committed by the ALJ,[3] the Court still affirmed the ALJ's decision because the Court was convinced the ALJ would ultimately reach the same result if the matter were to have been remanded. Here, the Court finds the "errors" made by the ALJ were similarly harmless as those in *Liapis*. Therefore, based on this guidance, the Court must affirm despite the errors (or close calls) made by the ALJ in this matter.

First, Plaintiff alleges the ALJ erred in failing to fully explain the origin of the limitation within the residual functional capacity ("RFC") that Plaintiff could tolerate occasional interaction with coworkers and supervisors. [Dkt. 19 at 8-9.] The ALJ stated only that, "[t]o accommodate for his problems with social anxiety, the claimant was limited to performing work that does not require contact with the public for work purposes, or no more than occasional contact with co-workers and supervisors for work purposes." [Administrative Record ("R.") 31.] The ALJ did not support

[3] One of the errors the *Liapis* court found was that the ALJ improperly failed to explain his reasoning regarding supportability and consistency, which is one of the errors Plaintiff alleges here.

this finding with evidence.

Plaintiff argues the ALJ should have specifically addressed the two state agency consultants' opinions which found Plaintiff retained the capacity to perform work that required interaction with coworkers and supervisors that was incidental to the work performed. [Dkt. 19 at 6 (*citing* R. 202, 222).] This is a curious argument because all the restrictions to which these psychologists opined meant Plaintiff *was not disabled*. [R. 204, 214, 224.] Nonetheless, as the Commissioner correctly points out, the ALJ's articulation requirement is minimal. *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) ("Time and time again, we have emphasized that social-security adjudicators are subject to only the most minimal point of articulation requirements.") (citations omitted). The regulations at 20 C.F.R. § 404.1520c and § 416.920c say nothing about how detailed the ALJ must be and only require that the ALJ address supportability and consistency—and *Liapis* has seemingly limited even further the degree to which supportability and consistency must be addressed. Simply, there was no requirement that the ALJ address a restriction to "incidental" interaction.

Second, Plaintiff contends the ALJ erred in failing to include a restriction within the RFC that permitted Plaintiff to nap during the day. [Dkt. 19 at 8-11.] The sole reason the ALJ provided for rejecting Plaintiff's alleged need to nap was a lack of a medical opinion that suggested he needed to nap. [R. 29-30.] But, Plaintiff need not be instructed to nap by a physician for her to have included such a limitation within the RFC. *See, e.g., Maria P. v. Kijakazi*, No. 21-cv-132, 2022 WL 1016560, at *8 (N.D. Ill. Apr. 5, 2022) ("the plaintiff never said a doctor told her to take naps…and one would not expect her (or anyone else) to have asked a doctor for permission, as it were, to do that which she said necessity compelled"). It appears the only reason for an ALJ to note the lack of an "instruct[ion] to nap by a care provider" [R. 30] is "to reflect negatively on Plaintiff's subjective statements as a whole and particularly with respect to [his need to nap], which

is improper." *Christine C. v. Saul*, No. 19-cv-1981, 2020 WL 5702144, at *4 (N.D. Ill. Sept. 24, 2020).

However, the Commissioner is correct, that the record is meager when it comes to Plaintiff's need to nap during the day: (1) Plaintiff testified that he had "horrible" sleep because of nightmares [R. 51]; (2) Plaintiff once told his therapist that "his difficulty sleeping makes him not want to leave the house and talk to others" [R. 1088]; (3) Plaintiff said he would "try to catch up on a nap when my mother has to work because the house is all quiet" [R. 51]; and (4) Plaintiff's mother (whom the ALJ found not to be persuasive) completed a third-party function report where she stated Plaintiff takes a nap after lunch until dinner [R. 398]. This is all the evidence Plaintiff has cobbled together on this front; there are no complaints about needing to nap to his therapist or any of his doctors, and likewise there is no treatment (conservative or otherwise) for fatigue or insomnia. Although the Court is troubled by the ALJ's implication that a physician must suggest that a patient nap for that need to be recognized, the Court is still able to trace the ALJ's path of reasoning here – there is no support for a napping restriction, regardless of the fact that part of the lack of support is that no physician has recommended it.

Third, Plaintiff argues the ALJ failed to properly evaluate the opinions of Plaintiff's therapist Chris Sally MHP, BA. [Dkt. 19 at 11-15.] Plaintiff alleges both that the ALJ should have addressed specific evidence in the context of the therapist's opinions and that the ALJ should have provided a greater explanation for finding Mr. Sally's opinion not persuasive. [*Id*. at 12, 13.]

But an ALJ does not have to discuss all of the evidence a plaintiff may have wanted her to. *Warnell*, 97 F.4th at 1053 ("An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning.") (citations omitted). The key question is whether the ALJ missed an entire line of evidence, *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (ALJ "is prohibited only from

ignoring an entire line of evidence that supports a finding of disability"), which is clear did not happen here. The ALJ minimally complied with the requirements of 20 C.F.R.§ 404.1520c when she generally considered Plaintiff's medical history as she set forth in her opinion and she contrasted that with evidence she believed contradicted Mr. Sally's medical opinion. *Fanta v. Saul*, 848 F. App'x 655, *659 (7th Cir. Mar. 15, 2021) ("When reviewing an ALJ's opinion, 'we give the opinion a commonsensical reading rather tha[n] nitpicking at it.'") (citation omitted). There is no reason to believe remand might lead to a different result; the Court cannot see how remanding for a specific discussion of Plaintiff's recurrent nightmares and interrupted sleep, his preference to remain at home alone, his distrust of others, and his difficulty maintaining relationships with coworkers [*see* Dkt. 19 at 12] would cause the outcome here to be any different when the ALJ's decision as a whole already touches upon these topics in a general way.[4] *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) ("This discussion provides the necessary detail….We do not discount it simply because it appears elsewhere in the decision."). The ALJ's articulation requirement is minimal. *Warnell*, 97 F.4th at 1053 ("Time and time again, we have emphasized that social-security adjudicators are subject to only the most minimal point of articulation requirements.") (citations omitted). What matters is whether the court can trace the path of the ALJ's reasoning, not whether she discussed every piece of evidence Plaintiff wanted her to. As the Seventh Circuit stated in *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001), an ALJ need not "address every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into

---

[4] Among other references, the ALJ's opinion specifically mentions Plaintiff's "anxiety in social situations" [R. 23], the fact he "did not leave his home often in part because he had panic attacks in public [*id*.]; his "social anxiety that interfered with his ability to make and keep friends [*id*.]; the fact he told his therapist he "still had a lot of anxiety being around people" [R. 26]; "panic attacks especially when he is out in public" [R. 27]; difficulties with co-workers including panic attacks if they were to touch him or not do their jobs correctly [*id*.]; Plaintiff's "verbal altercations with co-workers because he had been touched and because of their bad driving" [*id*.]; "panic attacks when he has to leave home for any reason" [R. 29]; and Plaintiff's testimony that "nightmares of previous traumatic events interfered with his sleep, but he would nap during the day when his mother was at work and the house was quiet [*id*.].

the reasoning behind her decision to deny benefits." Such glimpses into the reasoning behind the ALJ's decision to deny benefits are present here and are enough. The Court cannot

> remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result. That would be a waste of time and resources for both the Commissioner and the claimant. Thus, we look at the evidence in the record to see if we can predict with great confidence what the result on remand will be.

*McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). Here, the Court can predict with great confidence that the result upon remand would not change if the Court ordered strict compliance with 20 C.F.R.§ 404.1520c or a greater explanation for finding Mr. Sally's opinion unpersuasive.

Lastly, Plaintiff raises an ancillary argument that the ALJ erred by equating Plaintiff's "ability to perform minimal and trivial activities of daily living with an ability to perform full-time work." [Dkt. 19 at 14.] The Court finds the ALJ did not equate Plaintiff's activities with full-time work. Rather, the ALJ relied on Plaintiff's activities of daily living to show Plaintiff could, at a minimum, do more than he claimed he could do. There is a critical difference between an ALJ improperly saying that a claimant can perform this range of activities, therefore he can work, *see Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013), and an ALJ reasonably saying that the claimant can perform this range of activities, therefore he can do more than he claims, *see Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir. 2013). In this case, it was the latter. *See also Jeske*, 955 F.3d at 592-93 ("Here, the ALJ did not reason that Jeske's activities of daily living are as demanding as those of full-time work. Rather, the ALJ considered Jeske's activities to determine whether her symptoms were as severe and limiting as she alleged."). The Court does not find the ALJ cherry-picked trivial daily activities to demonstrate Plaintiff was able to perform a great range of tasks, but merely that the ALJ explained how certain daily tasks demonstrated the performance of certain real-life skills Plaintiff claimed he was lacking.

In sum, the Court finds the ALJ set forth an adequate decision, particularly under the Seventh Circuit's recent *Liapis* decision. The regulatory factors of supportability and consistency could have been more directly addressed, but the Court finds this would not have changed the ultimate outcome of the ALJ's decision and therefore any error with regard to these regulatory factors is harmless. Likewise, the ALJ could certainly have better rationalized the reasoning behind declining to include a daytime napping restriction within the RFC (without problematically implying that one must be instructed to nap by a physician), but again, the Court finds that any change in wording of this section would not have changed the ultimate outcome of the ALJ's decision. Finally, although the Court does not find error in the way the ALJ addressed Mr. Sally's opinion, should there have been any, it was excusable. For the foregoing reasons, the Court declines to remand this matter. Plaintiff's motion for summary judgment [Dkt. 19] is DENIED and Defendant's motion for summary judgment [Dkt. 21] is GRANTED. The final decision of the Commissioner is affirmed.

**ENTERED: September 11, 2026**

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge